STATE OF IOWA, Appellee, v. GUS HAGEDORN, Appellant.

**RAPE:** Corroboration—**Source of Corroboration.** A possible implication from one instruction, that a prosecutrix in rape might corroborate herself, is necessarily effaced by a clear and definite statement to the jury that the required corroboration must consist of testimony other than that of prosecutrix.

**RAPE:** Corroboration—**Conduct of Strangers.** A far-fetched inference in an instruction, that a prosecutrix in rape might be corroborated by the conduct of persons other than the defendant, will not constitute reversible error.

**RAPE:** Corroboration—**Birth of Child.** The birth of a child to prosecutrix is corroborative of the fact that someone has had illicit relations with the prosecutrix, and it is not error to so instruct.

**CRIMINAL LAW:** Instruction Without Basis in Testimony. A requested instruction in a rape case, relative to the effect of testimony tending to show sexual relations of prosecutrix with men other than the defendant, is properly refused when the record reveals no testimony as a basis therefor.

**CRIMINAL LAW:** Trial—Argument—Responsiveness. An argument which is responsive to material record testimony is necessarily proper.

Headnote 1: 16 C. J. p. 1053. Headnote 2: 17 C. J. p. 339. Headnote 3: 33 Cyc. p. 1501. Headnote 4: 17 C. J. p. 176. Headnote 5: 16 C. J. p. 909.

*Appeal from Audubon District Court.*—E. B. Woodruff, Judge.

## April 7, 1925.

The defendant was adjudged guilty of statutory rape upon Darlene Markley, the prosecutrix. The prosecutrix was 14 years of age, and the defendant was 37 years of age, at the time of the commission of the offense. The defendant has appealed.— *Affirmed.*

*Mantz & White* and *Tom C. Smith,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

Evans, J.—The prosecutrix is the sister of the defendant's wife. A child was born to her in October, 1923. The defendant was charged with having sustained illicit relations with her on or about the date of Christmas, 1922.

The appellant assigns various prejudicial errors committed upon his trial.

I. One complaint is that the trial court, by its instructions, permitted the jury to consider, as corroborative evidence, alleged admissions of guilt by the defendant to the prosecutrix, as testified to by the prosecutrix herself. The

1. Rape: corroboration: source of corroboration.

instructions do not in terms so advise the jury. The contention is that such is their fair implication. The instructions did advise the jury that, if it found that the defendant had admitted his guilt in conversation, such fact could be regarded as corroborative evidence, tending to connect him with the offense. One of the witnesses testifying to such conversation was the prosecutrix. It is argued, therefore, that the jury could understand that such testimony by the prosecutrix could be deemed corroborative of herself. Granting that such an implication was possible, the court fully guarded against it, by advising the jury that the statutory corroboration required, must be other than the testimony of the prosecutrix herself. This clearly negatived the implication which is made the basis of the appellant's complaint. Several witnesses other

than the prosecutrix testified to alleged admission of guilt by the defendant.

II. It is further complained that the instructions advised the jury that it could consider the conduct of the wife of the defendant, as corroborative evidence against him. Here again a question of implication or construction of the language of the court is involved. There was no direct statement in the instructions that the conduct of the wife could be considered against the defendant. The prosecutrix lived in the home of the defendant and his wife much of the time. Her pregnant condition was known to the defendant and his wife. She was treated kindly by the defendant and his wife. The defendant took her to Omaha, in an unsuccessful search for a maternity home. He later took her to Des Moines, and left her there. Upon her request later, he came after her and took her to his own home. Her child was born in this home. The evidence was that he paid all the expenses attending these trips, and for the final illness. The court advised the jury that these circumstances were proper for their consideration on the question of corroboration. The instructions also advised the jury that it was for it to determine whether these acts on the part of the defendant were done because of a consciousness of his own guilt, or were done only as acts of kindness on his part toward the prosecutrix, because of her relation to his wife. If the latter, the jury was charged to disregard the conduct as being corroborative. The conclusion of such instruction was as follows:

2. RAPE: corroboration: conduct of strangers.

"* * * then such acts should not be considered by you as tending to point out the defendant as the guilty man. But it is for you to say whether or not such conduct on the part of the defendant in regard to taking care of Darlene Markley tends to point him out as the guilty party."

In the body of this instruction, the following language was used:

"* * * It is a question which you must consider whether they were rendered by him because he was guilty of her condition, or whether such services were rendered because she was the sister of his wife, and that this *defendant and wife* took care of and aided the said Darlene Markley in finding some place to

stay while pregnant, on account of her relationship and sympathy for her, * * *''

This is the only reference to the wife contained in the instruction. It will be noted that it was used by the court as suggestive of an innocent explanation of the defendant's conduct, and tended to ascribe to him the same innocent motive as naturally actuated the conduct of the wife toward her own sister. There was no suggestion in the instruction that the act of the wife could be considered *against* the defendant. The clear effect of the language at this point was favorable to the defendant, rather than prejudicial to him. Assuming, therefore, that it was a technical error to couple the name of the wife with that of the defendant in any connection, we would not be justified, upon this record, in saying that it was prejudicial to the defendant.

III. It is further complained that the court advised the jury that the birth of the child could be considered as statutory corroboration. This complaint presents a misconception of the record. The court expressly advised the jury otherwise, and to the effect that such fact would not tend to connect the defendant with the commission of the offense. The court did instruct the jury that the birth of the child was corroborative evidence that the prosecutrix had sustained illicit relation with *someone*, but guarded the statement as already indicated.

3. RAPE: corroboration: birth of child.

IV. The defendant requested the giving of Instruction No. 3 as follows:

''You are further instructed that in your deliberations you may take into consideration any evidence which shows or tends to show that the complaining witness, Darlene Markley, has had sexual intercourse with men other than the defendant, Gus Hagedorn, and such evidence is received for the purpose only of lessening the probability of the defendant having committed said crime on or about the time charged.''

4. CRIMINAL LAW: instruction without basis in testimony.

This request was refused, and error is assigned thereon. Appellant does not bring to our attention any evidence in the record upon which such an instruction could properly be predicated. His complaint is predicated solely upon the holding in

*State v. Bebb,* 125 Iowa 494. In that case, it was held to be proper cross-examination of the prosecutrix, to ask her if she had sustained such illicit relations with other persons. The reason given for such holding in such case was that the prosecutrix was in a pregnant condition at the time of the trial, and that condition enlisted sympathy from the jury in her favor, and that the cross-examination was proper on this account alone. It was expressly held, however, in that case that the evidence was not material on the main issue of defendant's guilt. So far as appears in this record, the defendant was permitted full liberty of cross-examination. In presenting this assignment of error, it is incumbent upon the defendant, as appellant, to show some evidence in the record, or some adverse ruling by the court in the admission of evidence, which properly called for the giving of the requested instruction.

V. Lastly, complaint is made of misconduct of the county attorney in his closing argument to the jury. The following quotation from such closing speech is presented in the record:

"What will be the result of letting Gus Hagedorn get by with a dollar and a quarter affidavit in one hand and a .32 gat in the other? * * * What is going to be the result in Audubon County of letting men bring illegitimate children into the world, like Gus Hagedorn, as the evidence shows he has been, and then getting out of it with a boughten affidavit that can be fixed up by Tom Smith for a dollar and a quarter a throw, according to Tom Smith, in one hand, and a .32 gat in the other?"

5. CRIMINAL LAW: trial: argument: responsiveness.

The State introduced evidence to the effect that the defendant had obtained an affidavit from the prosecutrix, exonerating him from responsibility for her condition; that he obtained such affidavit by threats that he would "shoot holes" through her family if they made him any trouble. Several members of the family testified to like threats made by the defendant. The language complained of in the address of the county attorney had reference to this evidence, and was germane thereto. It was, therefore, legitimate.

The foregoing comprises the principal grounds that are argued. Other minor errors are referred to; none of which we

deem prejudicial. The record discloses that the defendant had a fair trial.

The judgment is, accordingly,—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.